## JULES LACAZE *v.* REVGES LOUIS SEJOUR.

An insolvent, who had placed on his *bilan* a debt due by him to the plaintiff, will, on the execution of a release to him by the defendant, be a competent witness for the latter, in an action by the plaintiff against him as a dormant partner, to prove that no contract of partnership existed. *Per Curiam :* By the surrender and release the witness became entirely disinterested.

In an action by the creditor of an insolvent, against a third person as a secret partner of the debtor, the defendant may, on the cross-examination of a witness of the plaintiff's, require him to state any declarations of the insolvent, as to the supposed connection of the latter as a partner with the defendant, made previous to the insolvency. *Per Curiam :* The anwser was part of the *res gestæ,* and made at a time not suspicious.

The liability of a secret or dormant partner, depending, upon the mere fact of part nership, his name not being announced, and no credit being given to him personally as a supposed member, it is not necessary, in case of his withdrawal, to give any notice thereof to the public.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

*J. F. Pepin,* and *Benjamin,* for the appellant.

*Canon,* for the defendant.

MORPHY, J. The petitioner seeks to recover of the defendant $14,043 50, alleging that this sum was due to him on notes, and on an open account, by one Alphonse Fleury, who was doing business in the city of New Orleans, as a merchant, under the style of A. Fleury; that the said Fleury, having failed, and deposited his books in court, he, plaintiff, discovered that the defendant was a secret partner of said Fluery in his business, and that said partnership being a commercial one, the members thereof are bound, *in solido*, for the partners debts, of which this is one, &c. The defendant, after a general denial, set up various defences, and denied that he ever was a dormant partner, or a partner in any other form, of Alphonse Fleury, &c. The case was laid before a jury, whose verdict was in favor of the defendant. From the judgment pronounced upon this verdict, the plaintiff appealed, having failed in a motion to obtain a new trial.

The main issue placed before the jury, appears to have been *socius vel non*, but, as the answer presented various other grounds of defence, the judge, in his reasons for refusing a new trial, informs us that he requested the jury to state on what reasons they grounded their verdict, as it would aid the lower court, and this court, in the farther proceedings in the case; that on the return of the jury, he acordingly inquired of them the grounds of their verdict, when, their foreman answered, that there was not sufficient proof to satisfy them of the existence of a partnership between Fleury and the defendant. The judge being of the same opinion, no doubt, refused the trial prayed for.

Our attention has been drawn to an entry made on the first page of Fleury's Day-book, in 1835. It is in the hand writing of the defendant, who, it appears, kept Fleury's books for him, until he could procure a book-keeper. This entry, if taken alone, would, to be sure, establish that the parties had formed some sort of partnership, as it credits the defendant for a sum of $600, as his portion of capital put into the partnership; but from other entries in the same book, and in other books of the insolvent, the account of defendant appears to have been kept like that of any other person doing business with Fleury, and

the sum of $600, appears to have been re-imbursed to the defen-
dant, a circumstance inconsistent with the existence of a partner-
ship between them.   A great many witnesses were examined
on both sides.   Some of them stated, that they had heard it said,
and believed that Fleury and the defendant were partners,
Gruntz, one of them, adds that, in 1837, the defendant proposed
to him to form a partnership with him and Fleury, and told him
that he was a partner of the latter.   A number of other witnes-
ses testified that Fleury never had any partner; that, had any
partnership existed between him and the defendant, they would
have known it from their intimacy with the parties; and that
these rumors of a partnership between them, began to be heard
of only after the failure of Fleury, when the plaintiff spoke of
suing Séjour, as a dormant partner.   Louis Feraud stated,
that he was intimately acquainted with Fleury's business; that
the $600, was only loaned to Fleury by the defendant, to assist
him in the beginning; *that it was paid back to Fleury, and that
he was present at the settlement they made some time after.*
Alphonse Fleury, who was also examined as a witness, testifi-
ed, that no partnership ever existed between him and the defen-
dant; that he was intimate with Séjour, and was the godfather of
one of his children; that Séjour lent him a sum of $600, which he
was to return little by little, and which he has since entirely
paid to him.   Bussy, one of the plaintiffs' witnesses, stated,
on his cross-examination, that he became the clerk of Fleury,
in 1837; that Fleury, did his business alone, and had no part-
ner; that had Séjour been in partnership with him, witness
would have known it; that Séjour occasionally bought goods from
Fleury, and settled for them from time to time, and never made
any inquiry into the situation of the affairs of the store.   That,
in 1837, when a partnership between Fleury and Gruntz was
contemplated, and they were making an inventory of Fleury's
stock in trade, witness asked Fleury, how he expected to
arrange the partnership, when there was a credit on the
books to Séjour as a partner; that Fleury answered, that Séjour
was not a partner, but had only loaned him the money; that
upon witness' remarking, that, by the books, Séjour appeared
as a partner, Fleury said, it mattered not.

Lacaze v. Séjour.

A bill of exceptions was taken to the opinion of the judge, who decided that, on the defendant's executing a release to Fleury, the latter's testimony should be received. We do not think that the judge erred. The circumstance of Fleury's having failed, and placed on his *bilan,* the debts ought to be recover.ed in this suit, coupled with the release executed to him by the defendant, made him an entirely disinterested and competent witness; nor do we think that the judge erred in allowing Bussy, the plaintiff's witness, to state on his cross-examination, the answer made to him by Fleury, in 1837, when about taking an inventory of the store, in consequence of the contemplated partnership between Gruntz and Fleury. This answer was part of the *res gestæ,* and was made at an unsuspicious time. Phillips, on Evidence, 1 vol. p. 145, 206. It has not been shown that the defendant ever interfered in any manner in the affairs of Fleury, nor at any time received, or was to receive any portion of the profits he made in his trade, nor that he said or did any thing from which it could be inferred that he was Fleury's partner, except the declaration spoken of by Gruntz, which the jury do not appear to have believed, opposed as it was to the testimony of the notary who prepared the act of the projected partnership between Fleury and Gruntz. The notary deposes that neither of them mentioned to him, at the time, the name of defendant, as his being in any way connected with, or concerned in the partnership to be formed between them. The credibility of Gruntz, was moreover affected by his being a creditor of Fleury, and, as such, interested in the question involved in this suit. The only circumstance then, which gives countenance to the plaintiff's claim, is the entry discovered to have been made by the defendant, on the first page of the insolvents Day-book, in 1835; but this entry, when coupled with the other circumstances of this case, seems to show, at most, that there was at first a partnership formed, or contemplated between the parties. The idea appears afterwards to have been abandoned. The money advanced by the defendant, was refunded to him by Fleury, and the business carried on by the latter alone, and for his sole account. Of the withdrawal of the defendant from the partnership originally intended, it was unnecessary to give any notice

to the public, as the liability of a dormant partner depends upon the mere fact of partnership, his name not being announced, and no credit being given to him personally, as a supposed member of the firm. Gow on Partnership, 251. The existence of the partnership was a question of fact, on which the finding of the jury, under the evidence adduced, is by no means so clearly erroneous as to make it our duty to disturb it, especially when the judge below has expressed his opinion of its correctness, by refusing a new trial.

*Judgment affirmed.*